UNITED STATES of America; The State of New York, and UDC–Love Canal, Inc., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION; Hooker Chemicals Corporation; Occidental Petroleum Investment Corporation: The City of Niagara Falls, New York; Niagara County Health Department; and The Board of Education of the City of Niagara Falls, Defendants.

No. CIV–79–990C.

United States District Court,
W.D. New York.

Dec. 22, 1987.

U.S. Dept. of Justice, Environmental Enforcement Section, Land and Natural Resources Div. (Bruce Gelber, of counsel), Washington, D.C., and Robert Abrams, Atty. Gen. of State of N.Y. (Eugene Martin–Leff, Asst. New York State Atty. Gen., of counsel), New York City, for plaintiffs.

Piper & Marbury (Thomas H. Truitt, of counsel), Washington, D.C., for defendants Hooker Chemicals & Plastics Corp., Hooker Chemicals Corp., and Occidental Petroleum Inv. Co.

Gellman, Brydges & Schroff (Earl W. Brydges, Jr., of counsel), Niagara Falls, N.Y., for the City of Niagara Falls.

Phelps, Gray & Hewitt (Benjamin N. Hewitt, of counsel), Niagara Falls, N.Y., for Bd. of Educ. of the City of Niagara Falls.

CURTIN, Chief Judge.

Defendants Occidental Chemical Corporation [OCC], City of Niagara Falls [City], and the Board of Education of the City of Niagara Falls [Board] now move to compel deposition testimony from government witnesses regarding health, epidemiological, habitability, and migration evidence (Items 555–58, 563). *See* Rule 26 of the Federal Rules of the Federal Rules of Civil Procedure. Plaintiffs State of New York [State] and United States of America [United States] oppose (Items 565, 567–69).

Defendants seek this court order because the governments are not allowing their witnesses to testify about health, epidemiological, habitability, or migration evidence. Plaintiffs claim that only theoretical evidence of health risk is appropriate for "Phase I" [liability] discovery, and that discovery of empirical evidence of epidemiology and habitability, which includes government Love Canal health effect studies gathered over the last decade, is only appropriate for the Phase II [remedy] portion of the case.

Defendants oppose. OCC argues:

The governments' efforts to cut off this relevant discovery should be rejected. The real reason for their action is the desire to shield from discovery damaging evidence. Moreover, the governments' position ignores the State's own common law claims and disregards the broad scope of discovery set forth in Fed.R.Civ.P. 26(b).

Government health evidence is discoverable because the governments have relied upon this data to support every major undertaking at Love Canal. Indeed, the State has noted explicitly that epidemiology data formed an integral part of the State's nuisance declarations that evacuated the Love Canal neighborhood in 1978. Risk to health and effect on health have been the *sine qua non* of the State's continuing position that the area is affected by a nuisance. To prevent discovery of that evidence while OCC seeks to defend against the State's nuisance and punitive damages claims would violate the tenets of the discovery rules and allow the State to try a case different from the one pending before this Court.

Item 555, pp. 2–3.

More specifically, OCC says that evidence it has discovered shows that remedial construction considerations and *not* chemical exposure were the basis for the majority of the Love Canal residential relocations. *Id.* at pp. 9–10. In fact, the company says no public health emergency existed in the landfill area. *Id.* at 10–11. It says that full discovery will reveal that

objective evidence in this case was overridden by political considerations that moved the State to declare an emergency condition at Love Canal. *Id.* at pp. 11–13.

OCC maintains that its effort to obtain health, epidemiological, habitability, and migration evidence is reasonably calculated to lead to the discovery of admissible evidence. *See* Rule 26(b)(1) of the Federal Rules of Civil Procedure; *In re Union Carbide Gas Plant Disaster*, 809 F.2d 195, 199 (2d Cir.1987); *Quarantillo v. Consolidated Rail Corp.*, 106 F.R.D. 435, 437 (W.D.N.Y.1985).

In addition, the company asserts that epidemiological evidence is discoverable because it is part of the basis for the State's nuisance declaration and it is relevant to allegations set forth as part of the State's common law claims. Item 555, pp. 15–18.

Finally, OCC says that if it is prevented from conducting discovery of this information, all health-related evidence related to risk should be barred at any Phase I trial. Moreover, OCC says that this court should expressly find that the governments have failed to demonstrate any health risk at Love Canal.

In plaintiffs' memorandum in opposition, they state that, in accordance with the case management procedures recently adopted by this court, defendants' motions must be denied. It noted that, on April 7, 1987, this court stated in Supplemental Order # 10 (Item 472) that it viewed the governments' motion for a bifurcated trial "with favor" and directed the parties "to the extent that is possible, to conduct all future depositions and other discovery mindful of the probability that bifurcation will be ordered." *Id.* at pp. 3–4. The parties subsequently negotiated a detailed Case Management and Discovery Order, which was adopted by this court on July 1, 1987 (Item 507). This order formally bifurcated discovery into two phases: liability and remedy. *Id.* at ¶¶ 7–11. Plaintiffs argue that both of these documents make clear that the court and the parties contemplated that the liability phase would focus primarily on conduct occurring prior to 1978 and that, to a large extent, Phase I discovery would be completed before Phase II discovery was commenced.

Plaintiffs say that despite the above, OCC has attempted to examine witnesses on questions outside the scope of Phase I during depositions held since July 1, 1987. The governments say that when they agreed to enter into a stipulation making "evidence of actual health impairment in the Love Canal area, including epidemiological studies and certain orders of the State Commissioner of Health, inadmissible at Phase I trial," defendants rejected this proposal. Item 567, pp. 6–7.

The plaintiffs summarize their arguments as follows:

OCC seeks to shift the focus of Phase I discovery from pre–1978 conduct that bears on the issue of liability, to epidemiological and health studies undertaken by the governments at Love Canal. As shown below, the discovery sought by OCC is not relevant to OCC's liability under any claim, including the State's common law claims. None of OCC's arguments warrants the unnecessary and costly foray into the issues OCC seeks to interject into the liability phase of this case.

First, contrary to OCC's suggestion, it is well established that proof of actual health impairment is not an element of liability under the State's common law claims. Second, even if evidence concerning actual health effects at Love Canal were material to proving a public nuisance, the governments will not offer any such proofs at a liability trial. In addition, the epidemiological data which OCC seeks to discovery cannot disprove the existence of a public nuisance at Love Canal. The Second Circuit has held that proof of a release or threatened release of known hazardous chemicals is sufficient to establish a public nuisance without additional evidence of risk. Moreover, due to statistical and other inherent limitations, epidemiological studies of health effects with long latency periods utilizing small populations— such as those conducted at Love Canal— are incapable of establishing the absence

of either actual health affects or a threat to public health.

OCC's real aim in seeking discovery during Phase I about epidemiological and health data is to gather information it believes it needs to mount a challenge—during Phase II—to the recoverability of certain of the governments' response costs at Love Canal. Allowing OCC to interject these matters into Phase I will undermine the important case management benefits derived from bifurcating this proceeding into a liability and remedy phase, and therefore, should not be permitted.

Item 567, pp. 7–8.

 I agree. As plaintiffs make clear, public nuisance actions do not depend on proof of actual harm but only the significant threat of injury to property, health, or safety. *See Copart Industries, Inc. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 568 (1977); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir.1985). Indeed, as mentioned above, the governments have explicitly stated that they are willing to stipulate that no epidemiological or health data evidence should be used during the trial on the liability issues. These factors seriously undermine defendants' Rule 26 arguments now.

I believe that, for purposes of determining liability at a Phase I trial, evidence of actual adverse health effects is largely irrelevant and unnecessary to the question of proof of a health threat at Love Canal. Instead, plaintiffs correctly state that a significant release or threatened release of hazardous wastes constitutes a public health threat as a matter of law, and makes additional proof regarding the nature of the health risk unnecessary. *New York v. Shore Realty Corp., supra*, at 1051; Item 567, pp. 15–23.

Moreover and, I think, very significant here is that the relief sought by defendants with this motion would seriously undermine the intent of the Case Management and Discovery Order and this court's Supplemental Order # 10. These documents prevent defendants from challenging the compensability of specific response actions at Love Canal until the Phase II trial on the issue of damages. Phase I is limited only to the question of the parties' respective liabilities for the contamination problem at the Love Canal. I believe that this court is well within its discretion to require that discovery—and ultimately, the trial—be conducted in this fashion because the complex nature of this case. I believe that this course is appropriate in the interests of expedience as well as judicial economy. Item 567, p. 25.

Defendants' motion is denied in all respects.

So ordered.